FILED'08 AUG 01 10:58USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JEFFREY SPOONIRE,                                    CV. 07-0025-KI

            Petitioner,

        v.                                    OPINION AND ORDER

MARK NOOTH, Superintendent,
Snake River Correctional
Institution

            Respondent.


        NELL BROWN
        Assistant Federal Public Defender
        101 S.W. Main Street, Suite 1700
        Portland, OR  97204

            Attorney for Petitioner


        HARDY MYERS
        Attorney General
        LESTER HUNTSINGER
        Assistant Attorney General
        Oregon Department of Justice
        1162 Court Street, NE
        Salem, OR  97301

            Attorneys for Respondent


1 - OPINION AND ORDER

King, District Judge.

Petitioner, an inmate at Snake River Correctional Institution, brings the action pursuant to 28 U.S.C. § 2254. He challenges the 2002 Oregon Board of Parole and Post-Prison Supervision ("Board") decision deferring his parole release. For the reasons set forth below, the Amended Petition for Writ of Habeas Corpus (#12) is DENIED, and this action dismissed with prejudice.

## BACKGROUND

In December, 1982, Petitioner was convicted of murder and sentenced to an indeterminate term of imprisonment not to exceed life, with a minimum term of five years. (Respt.'s Ex. 101.) Under Oregon's "matrix" parole system, the Board established a term of imprisonment of 168 months, with a parole release date of July 18, 1996. (Petr.'s Mem., docket #27, 2.) In 1993, based on a positive recommendation from the institution and Petitioner's history of good behavior, Petitioner received a 7-month reduction in sentence and the Board established an adjusted release date of December 18, 1995. (Respt.'s Ex. 103, 56.) Beginning in 1995, Petitioner had exit interviews with the Board. In light of Petitioner's long history of mental illness, the Board ordered a psychological evaluation of Petitioner for each interview. In 1995 and in 1997 the Board deferred Petitioner's release date for 24 months, finding that he presented a danger to the community. (Respt.'s Ex. 103, 59-63.) In 1999, Petitioner refused the

psychological evaluation and the Board again deferred Petitioner's release.  (*Id.*, 66.)

On January 15, 2002, the Board conducted another exit interview and Petitioner's psychological evaluation from March, 2001, was in the record.  The Board again deferred Petitioner's release date for 24 months, issuing the following written conclusion:

> Based on the doctor's report and diagnosis, coupled with all the information that the Board is considering, the Board concludes that the inmate suffers from a present severe emotional disturbance that constitutes a danger to the health or safety of the community.  The Board has considered this matter under the laws in effect at the time of the commitment offense(s).
>
> The Board defers release date for 24 months for a projected parole release date of 12/17/2003, for a total of 257 months.  A review will be scheduled in 06/2003 with a current psychological evaluation.

(Respt.'s Ex. 102, 3.)

Petitioner sought administrative review of the Board's decision alleging the Board: (1) violated the *Ex Post Facto* Clause when it applied OAR 255-050-0013; (2) failed to comply with the requirement of OAR 255-60-005(4)(g)(1982) to initiate civil commitment procedures as provided in ORS Chapter 426; and (3) contrary to its policies, allowed many new and previously unheard accusations to be included in the hearing.  (Respt.'s Ex. 103, 427.)  On May 7, 2002, the Board reaffirmed its decision in Administrative Review Response #7.  (*Id.* at 430-31.)

Petitioner sought judicial review and the Oregon Court of Appeals granted his Motion to Proceed. (Respt.'s Ex. 106.) On review, the Court of Appeals affirmed the Board's action without opinion and the Oregon Supreme Court denied review. (Respt.'s Ex. 111; Respt.'s Ex. 110.)

## DISCUSSION

In the instant petition, Petitioner challenges the 2002 Board action on the basis that:

> a) Petitioner was denied his right to due process of law in violation of the Fourteenth Amendment to the United States Constitution, as well as his rights under the Eighth Amendment, when the Board deferred his parole release based solely on its finding that Petitioner suffered from a present severe emotional disturbance rendering him a danger to the health and safety of the community and without considering instituting civil commitment proceedings.

> b) The Board violated the Constitutional prohibition on *ex post facto* laws set out in Article 1, Section 9, Clause 3 when it applied a rule, enacted after the commission of Petitioner's offense, to conclude that Petitioner's refusal to submit to a psychological evaluation constituted misconduct.

(Amended Petition, docket #12, 4.)[1] Respondent contends claim (a) is unexhausted and procedurally defaulted, and claim (b) is without merit, and in any event, the state court decision as to that claim is entitled to deference under § 2254(d)(1). (Response, docket #20, 1-2.)

---

[1]Any challenge to parole deferral in 1999 that is interwoven with Petitioner's challenge to the 2002 deferral will not be considered as it is barred by the 1-year statute of limitations applicable to Petitioner's habeas petition under 28 U.S.C. § 2244(d)(1).

4 - OPINION AND ORDER

I.    Exhaustion and Procedural Default

   A.    Standards

   Generally, before a federal court may consider a petition for
habeas relief pursuant to 28 U.S.C. § 2254, a state prisoner must
have exhausted all available state court remedies through a direct
appeal or through collateral proceedings.    *See*    28 U.S.C.
§ 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842
(1999)(state courts must have an opportunity to act on claims
before they are presented in a habeas petition).    The exhaustion
requirement is satisfied when federal claims have been fairly
presented to the state's highest court as a federal question.
*Duncan v. Henry*, 513 U.S. 364, 366 (1995); *Castillo v. McFadden*,
370 F.3d 882, 886 (9th Cir. 2004).    The proper factual and legal
basis for the claim must be presented to the state court.
*Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005); *Weaver
v. Thompson*, 197 F.3d 359, 364 (9th Cir. 1999).

   If a petitioner has not "fairly presented" his federal claims
in state courts, and can no longer do so under state law, then the
petitioner's state-court remedies are technically exhausted.
*Coleman v. Thompson*, 501 U.S. 722, 732 (1991); *Johnson v. Zenon,* 88
F.3d 828, 829 (9th Cir. 1996).    When state-court remedies are
"technically exhausted" they are also "procedurally defaulted"
because the state court has not had an opportunity to hear the

claims before the federal court considers them. *O'Sullivan,* 526 U.S. at 842.

Federal habeas review of procedurally defaulted claims is precluded unless the prisoner can show both "cause" for the procedural default and actual prejudice or unless the prisoner demonstrates that failure to consider the claims will result in a fundamental miscarriage of justice. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Coleman,* 501 U.S. at 750. To show a fundamental miscarriage of justice resulting from a procedural default, a petitioner must establish factual innocence. *Schlup v. Delo,* 513 U.S. 298, 329 (1995); *Calderon v. Thomspon,* 523 U.S. 538, 559 (1998); *Wildman v. Johnson,* 261 F.3d 832, 842,43 (9th Cir. 2001).

B.    Ground for Relief (a)

Petitioner alleges the Board's 2002 decision deferring release for 24 months violated his rights under the Fourteenth and Eighth Amendments. However, the record shows Petitioner did not raise these constitutional claims in State court.

In Oregon, judicial review of administrative agency proceedings, including Board of Parole proceedings, are subject to the Oregon Rules of Appellate Procedure. Or. R. App. Proc. 4.05. Under the rules, an appellant's brief must set forth the questions presented on appeal and a concise summary of the arguments appearing in the body of the brief. Or. R. App. Proc. 5.40 (6) and (7). In addition, Rule 5.45 specifies:

(1) A question or issue to be decided on appeal shall be raised in the form of an assignment of error, as prescribed in this rule.  Assignments of error are required in all opening briefs of appellants and cross-appellants.    No matter claimed as error will be considered on appeal unless the claimed error . . . is assigned as error in the opening brief in accordance with this rule . . .

(2) Each assignment of error shall be separately stated under a numbered heading. . . .

Petitioner's Motion for Leave to Proceed with Judicial Review presented the following questions:

1)  Did the board abuse its discretion when it chose not to initiate civil commitment proceedings after finding that petitioner was a danger to the community?

2)  Was the board's action to deny civil commitment consistent with the criteria set out in *former* OAR 255-60-005(4)(c)?

3)  Did the board err by ignoring the rules for the treatment of the mentally ill?

(Respt.'s Ex. 104, 2.)  In his motion, Petitioner referred to the Fourteenth Amendment and due process in a footnote and in arguing: "[p]arole rules framed in discretionary terms does [sic] not confer unlimited choices upon the board.  A parole board may not engage in 'flagrant or unauthorized action' and statues [sic] or rules cannot be read as granting the board discretion to treat inmates arbitrarily and capriciously in violation of due process." (*Id.* at 9 n5.)  In its order granting Petitioner's Motion for Leave to

Proceed, the Oregon Court of Appeals specified two questions of law, but neither identified a due process issue.[2]

In his Brief to the Oregon Court of Appeals, Petitioner's set forth the following assignments of error:

> No. 1:  The board violated the state and federal constitutional prohibitions against *ex post facto* laws when it found that petitioner's April 1999 refusal to submit to a psychiatric or psychological evaluation prior to release on parole constituted misconduct.

> No. 2:  The board erred in refusing to initiate civil commitment proceedings pursuant to ORS Chapter 426 in petitioner's case.

> No. 3:  The board erred in finding that it had no authority to address mental health treatment for those offenders who are considered mentally ill.

(Respt.'s Ex. 107, i.)  He defined the questions presented as:

> 1) Does the application of OAR 255-050-0013 to petitioner violate the prohibition against ex post facto laws?

> 2) Did the board abuse its discretion in failing to initiate civil commitment proceedings on behalf of petitioner?

> 3) Does the board have authority to provide medical treatment to treat petitioner's diagnosed emotional disturbance?

---

[2]The questions of law the Oregon Court of Appeals specified were: (1) [w]hether, because of the constitutional ban against *ex post facto* laws or for some other reason, the version of the Board's administrative rule relating to civil commitment of allegedly mentally ill offenders that was in effect when petitioner committed the crime for which he now is under the Board's supervision applies, notwithstanding that the Board has repealed the law; and (2) [a]ssuming that the administrative rule in question applies to petitioner now, whether the Board abused its discretion in deciding not to initiate civil commitment proceedings with respect to petition.  (Respt.'s Ex. 106.)

(Respt.'s Ex. 107, 2.)  Neither the assignment of errors nor the questions presented raised violation of the Fourteenth and Eighth Amendments  as  the  legal  basis  for  Petitioner's  claims. Petitioner's Petition for Review to the Oregon Supreme Court also did not raise violation of the Fourteenth and Eighth Amendments. (Respt.'s Ex. 109, 4.)  Because Petitioner did not raise violation of the Fourteenth and Eighth Amendments as error to the Oregon courts, and the time for doing so has passed, *see* Or. R. App. Proc. 2.05; Or. Rev. Stat. 19.255, Ground (a) is procedurally defaulted. Petitioner has neither demonstrated cause and prejudice, nor demonstrated a fundamental miscarriage of justice sufficient to excuse the default.  Accordingly, habeas relief on Ground (a) is precluded.

II.   The Merits

      A.   Standards and Scope of Review under § 2254

      An application for writ of habeas corpus shall not be granted unless the adjudication in State court was:

> (1) contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254 (d).  In *Williams v. Taylor*, 529 U.S. 362, 386-89 (2000), the Supreme Court construed this provision as requiring federal habeas courts to be highly deferential to the state court decisions under review.

9 - OPINION AND ORDER

"'Clearly established Federal law' is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lambert v. Blodgett*, 393 F.3d 943, 974 (9th Cir. 2004) *cert. denied*, 126 S. Ct. 484 (2005). A state court decision is "contrary to" clearly established Federal law if it is "in conflict with", "opposite to" or "diametrically different from" Supreme Court precedent. *Williams,* 529 U.S. at 388.

An "unreasonable application" of clearly established federal law occurs when "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lambert*, 393 F.3d at 974 (citing *Williams*). "The state court's application of . . . law must be *objectively unreasonable*." *Williams*, 529 U.S. at 411 (emphasis added). "Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied clearly established federal law erroneously or incorrectly." *Id*.

The last reasoned decision by the state court is the basis for review by the federal court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Franklin v. Johnson*, 290 F.3d 1223, 1233 n. 3 (9th Cir. 2002). When a state court does not supply the reasoning for its decision, a federal court does an independent review of the

record to determine whether the state court decision was objectively unreasonable. *Delgado v. Lewis*, 223 F.3d 982 (9th Cir. 2000). The review does not, however, change the rule of decision. *Greene v. Lambert*, 288 F.3d 1081, 1089 (9th Cir. 2001). If the federal court does not find that the state court decision was objectively unreasonable, deference is given to the state court decision and habeas relief is denied. *Delgado*, 223 F.3d at 981-82; *see also Williams*, 529 U.S. at 386-89.

Here, the Oregon Court of Appeals affirmed the Board's action without opinion and the Oregon Supreme Court denied review. (Respt.'s Ex. 111; Respt.'s Ex. 110.) I must, therefore, conduct an independent review of the record to determine whether the Oregon Court of Appeals' decision upholding the Board's 2002 action was contrary to, or an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States.

B.    Ground for Relief (b)

Petitioner alleges the Board violated the constitutional prohibition on *ex post facto* laws when it applied a rule, enacted after the commission of his offense, to conclude that his refusal to submit to a psychological evaluation constituted misconduct. (Amended Petition, docket #12, 4.) As an initial matter, I must identify the rule Petitioner alleges was used unconstitutionally.

In his Memorandum to this Court, Petitioner states: "[t]o the extent that the Board relied on [Petitioner's] failure, in 1999, to

11 - OPINION AND ORDER

submit to an evaluation by Dr. Colistro, in deferring his release on parole in 2002, this would constitute a violation of the prohibition against *Ex Post Facto* laws." Petitioner then relies on language from his brief to the Oregon Court of Appeals to present the argument that the Board's application of OAR 255-050-0013 violates the prohibition against *ex post facto* laws. (Petr.'s Mem., docket #27, 16-17.) Petitioner concludes: "the Board's reliance in 2002 on his failure to submit to an evaluation by Dr. Colistro in 1999 as part of [Petitioner's] institutional misconduct in refusing to initiate civil commitment proceedings violated the prohibition on *ex post facto* laws." *Id.*

In his Brief to the Oregon Court of Appeals, Petitioner specified the Board's application of OAR 255-050-0013 as an *ex post facto* violation. (Respt.'s Ex. 107, 8-9; 12.) Petitioner argued that application of OAR 255-050-0013 resulted in the Board construing his refusal to submit to a psychiatric evaluation in 1999 as an incident of misconduct in the institution, and gave the Board an additional basis for deferring parole. (*Id.* at 12-14.) He argued that prior to the rule's enactment his refusal would not have been an incident of misconduct. Thus, based on Petitioner's Memorandum, (docket #27), and his briefing to the Oregon court of Appeals, (Respt.'s Ex. 107), I construe Petitioner's *ex post facto* claim to be that the Board applied OAR 255-050-0013 in its 2002 decision.

As a threshold matter, I must determine whether the Board applied OAR 255-050-0013 and construed Petitioner's 1999 refusal to be evaluated as misconduct in its 2002 decision.  OAR 255-050-0013 (1999) provides:

> (1) **The Board may postpone a parole release date until a specified future date when an inmate has refused to participate in a psychiatric or psychological evaluation,** which the Board ordered pursuant to ORS 144.223, prior to the inmate's release on parole.
> (2) When the Board rescinds a parole release date under this section, the Board shall conduct a hearing to postpone the inmate's release date.
> (3) The Board may postpone the parole release date up to two days before the inmate's good time date.

(Emphasis added.)  I find no evidence in the record suggesting the Board applied this rule in its 2002 decision.

The transcript of the 2002 Board hearing includes the following exchange between the Board and Petitioner:

| | |
|---|---|
| Board Chair: | The Board ordered, and you participated in a psychological evaluation for today's hearing, and that was done by Dr. H.F. Shellman.  Have you had a chance to review that report?" |
| Petitioner: | Yes, ma'am, I have. |
| Board Chair: | Any comments you'd like to make about the report? |
| Petitioner: | No. Not right offhand. |
| * * * | |
| Board Chair: | The report mentions some disciplinary write-ups since you've been in prison. It says that there have been 17, and at the time of this report, the last of those was in March of 1999.  Does that sound about right to you? |
| Petitioner: | Well, ma'am, I've had a recent one.  I'm not going to lie.  I've had a recent one. |
| Board Chair: | Okay, Well, I want to talk . . . yeah, I want to talk about those in a minute, because I ... those other opinions as well, but can you just tell the Board |

|               | generally why you had disciplinary write-ups while you've been in the institution? |
|---------------|-----------------------------------------------------------------------------------|
| Petitioner:   | You're speaking of in the past or just most previously? |
| Board Chair:  | Just why have you been unable to follow OSC rules generally? |
| Petitioner:   | Well, it's not always easy in here. You know, there's ... most of the times the rules violated, you know, I was guilty. |
| Board Chair:  | Um-hum. |
| Petitioner:   | And I'm not a perfect individual. You know, I have bad days and good days, just like everybody else. |
| Board Chair:  | Um-hum. |
| Petitioner:   | I have not had a write-up until here recently. I think I was 28, 29 months, something like that, clear going to ... to this last write-up. |
| Board Chair:  | And what ... what was your most recent write-up for? |

(Respt.'s Ex. 103, 387-388.)   A rather extensive probing of the nature of Petitioner's most recent disciplinary infraction ensued. (Respt.'s Ex. 103, 388-394.)   Petitioner and the Board Chair also discussed disciplinary infractions from 2001, noted in Dr. Shellman's report.   (*Id.*)

From the record it is clear the Board relied on the 2001 psychological evaluation during the 2002 hearing, and that Petitioner's misconduct was a concern.   At the end of the hearing, Petitioner mentioned his 1999 refusal to undergo evaluation in response to the District Attorney referring to psychological findings in his record.   He wanted the Board to know he "did not receive a fair evaluation [in 1999] unless it was based on previous evaluations."   (*Id.* at 421.)   However, Petitioner's refusal to participate in an evaluation in 1999 was not raised in the

discussion of his conduct and there is no evidence the Board construed his 1999 refusal as misconduct in its 2002 decision to defer release.

Petitioner argues Administrative Review Response #7 provides evidence the Board viewed his 1999 refusal as misconduct in 2002 because the Board stated: "Given your heinous crime and *your bad institutional conduct*, the board decided, in the interest of public safety, not to initiate the [civil commitment] procedure." (Petr.'s Mem., docket #27, 16.) (Emphasis added by Petitioner.) However, Petitioner's argument requires that "your bad institutional conduct" refer to his 1999 refusal to undergo psychiatric evaluation. That interpretation is speculative given that the hearing transcript shows the Board noted 17 instances of misconduct, questioned Petitioner at length about his most recent disciplinary infractions, and did not mention his 1999 refusal to be evaluated when discussing his misconduct.

Because I find no evidence in the record to show the Board applied OAR 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 or relied on Petitioner's 1999 refusal to be evaluated as misconduct in its 2002 decision, I will not review whether the Board should have reached a different conclusion. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (It is well settled that "'federal habeas corpus relief does not lie for errors of state law.'") (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). Federal courts may adjudicate an inmate's writ of habeas corpus under 28 U.S.C. § 2254 "only on the ground that he is in custody in

15 - OPINION AND ORDER

violation of the Constitution or laws or treaties of the United States." *Estelle*, 502 U.S. at 68.   Here, I find no evidence the Board applied OAR 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 in its 2002 decision.   Accordingly, it was neither contrary to nor an unreasonable application of established federal law for the Oregon courts to uphold the Board's decision and Petitioner is not entitled to relief on his *ex post facto* claim.

## CONCLUSION

Based on the foregoing, Petitioner's writ of habeas corpus #12 is DENIED and this proceeding dismissed with prejudice.

IT IS SO ORDERED.

DATED this 30 day of July, 2008.

Garr M. King
United States District Judge